THORNYCROFT APARTMENTS, INC., Landlord, *v.* ARTHUR E. KEAGY, Tenant.

County Court, Westchester County, September 29, 1939.

*Bernard J. Zincke,* for the landlord.

*Albert Stiefel,* for the tenant.

COYNE, J. This is a summary proceeding, brought to recover possession of the superintendent's apartment in a large apartment house on Garth road in the town of Eastchester. The petition alleges that the superintendent was an employee under a hiring wherein the employee received for his services the sum of $100 per month and the use of the apartment in question. The petition further alleges that on September 14, 1939, the relationship of employer and employee was terminated, and that thereupon the petitioner became entitled to possession of the apartment, and that upon demanding the same of the employee, it was agreed between them that the apartment would be surrendered to the petitioner on September sixteenth, last.

The answer of the employee denies generally the allegations of the petition, and alleges as a separate defense that the proceeding was instituted " for an unlawful purpose " *i. e.*, to coerce and intimidate the employee, and that as such it constituted an unfair labor practice, contrary to public policy.

The employer's witnesses testified that at about two P. M. on September fourteenth a " strike " was declared; that at that time the employee was changing a pump motor and, upon the declaration of the strike, he dropped his tools and stated that he had quit. He delivered all of his keys to the petitioner, except the key to the apartment, and agreed to remove from the apartment by September sixteenth. Another of the employer's witnesses testified that in a later conversation on September fourteenth, the employee stated that he was not on strike, but that he would not work while the strike was on. The employee, in his own behalf, testified that at two-thirty P. M. on September fourteenth a representative of the union, of which he is a member, appeared at the premises and called a strike. When testifying, he admitted that he was on strike, but denied having quit his employment. However, on September eighteenth or nineteenth, he indorsed and cashed a check delivered to him by the managing agent of the property, bearing the indorsement, " Acceptance and endorsement of this check is full and final payment of all claims for salary and wages against the payer to the time of the termination of the payee's services."

Neither the employer nor the employee offered any proof as to the cause of the strike, or as to the existence of any agreement between the employer and the union of which the employee is a member, or as to any negotiations or differences between them. Whatever the labor dispute was, no proof as to the nature of it or as to the issues involved has been submitted to the court. There was no reference to it, except that the employee was a member of a union, and that the union had called a strike.

The testimony established clearly that the employee's wages consisted of $100 per month, payable in cash, and the use of an apartment in the premises. The payroll of the premises for the period from September first to September fifteenth, which was signed by the employee, shows his " Basic pay, $100.00, Cash earnings $50.00, ' Other ' $12.50, Total earnings $62.50, O. A. B. tax $.63, Amount due $45.26." The difference between the $49.37 and the $45.26 appears to be a deduction for the period covered by the payroll during which the employee did not work. The " Other " $12.50 appears to be the value of the apartment occupied by the employee. This is supported by the employee's testimony as well as by an invoice offered in evidence by him, which shows:

| " Tax computation | | Cash wages......... | $45.84 |
|---|---|---|---|
| Wages............ | $45.84 | 1% Fed. Ret. Tax. | $ .58 |
| Apartment, Inc.... | $12.50 | | |
| | | | $45.26 " |
| Total............ | $58.34 | | |

Both the employer and the employee have been paying taxes computed on the aggregate of the wages paid in cash and the value of the use of the apartment. This strongly indicates that both considered the use of the apartment as part of the employee's compensation.

The right to occupy the apartment ceased when the right to compensation ceased. This occurred when the employee quit his employment, at which time he stopped working and turned over to the employer the keys incident to the employment. The relationship was terminated. The contention of the employee that he may nevertheless continue to occupy the apartment because a strike is in progress is without merit, as is also his contention that upon the termination of the employment he became a tenant at will requiring a thirty-day notice to vacate. In reference to labor disputes, it has been held that the occupancy of an employer's premises constitutes a sit down strike and that participation therein is good cause for discharge. (*National Labor Relations Board* v. *Fansteel Metallurgical Corp.*, 306 U. S. 240.)

On the evidence adduced, petitioner is entitled to a final order but execution of the warrant will be stayed until noon of Tuesday, next, October third, in order to afford the employee an opportunity to move. Submit order.